John K. Flock, Esq., State Bar No. 200183
*jflock@bglawyers.com*
Jaimee K. Wellerstein, Esq., State Bar No. 210600
*jwellerstein@bglawyers.com*
Darren P. Salute, Esq., State Bar No. 175285
*dsalute@bglawyers.com*
BRADLEY & GMELICH
700 North Brand Boulevard, 10th Floor
Glendale, California 91203-1422
Telephone: (818) 243-5200
Facsimile: (818) 243-5266

Attorneys for Plaintiff,
THE PERFECT EVENT INC. dba
EXTREME ENTERTAINMENT and
EXTREME GREEKS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

THE PERFECT EVENT INC., a California Corporation dba EXTREME ENTERTAINMENT and EXTREME GREEKS,

Plaintiff,

vs.

KOREY BOSWORTH an Individual; TODD DIAMOND an Individual; THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin Corporation; SUPREME GREEKS, a business entity, form unknown; SD GREEK LIFE, a business entity, form unknown; and DOES 1 through 50, Inclusive,

Defendants.

**Case No. 2:15-cv-04536-MMM–GJS**

*(District Judge Margaret M. Morrow; Magistrate Judge Gail J. Standish)*

**PLAINTIFF, THE PERFECT EVENT, INC.'S OPPOSITION TO DEFENDANT, TODD DIAMOND'S MOTION TO SET ASIDE ENTRY OF DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN K. FLOCK, ESQ. IN SUPPORT THEREOF**

**Date: September 28, 2015**
**Time: 8:30 a.m.**

Plaintiff, THE PERFECT EVENT, INC. dba EXTREME ENTERTAINMENT and EXTREME GREEKS ("TPE") submits this Memorandum of Points and Authorities in support of its Opposition to Defendant, Todd Diamond's Motion to Set Aside Default.



BRADLEY & GMELICH

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ....1

1. INTRODUCTION. ....1

2. THE FACTS SUPPORTING THE FIRST AMENDED COMPLAINT. ....2

   A. Plaintiff's Trade Secrets and Confidential Information. ....3

3. *FEDERAL RULE OF CIVIL PROCEDURE*, RULE 55 IS THE LEGAL AUTHORITY REGARDING SETTING ASIDE AN ENTRY OF DEFAULT. ....5

   A. Culpable Conduct By The Defendant Causing Default To Be Entered. ....6

   B. Diamond Cannot Present a Meritorious Defense. ....8

   C. Prejudice To The Non-Defaulting Party If Relief is Granted. ....11

   D. Diamond's Motion To Set Aside The Entry of Default Was Not Prompt. ....13

4. CONCLUSION. ....15

BRADLEY & GMELICH

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*American Ass'n of Naturopathic Physicians v. Hayhurst* (9th Cir. 2000)
227 F3d 1104 ........ 5

*Conetta v. National Hair Care Ctrs., Inc.* (1st Cir. 2001)
236 F3d 67 ........ 7

*Cutting v. Town of Allenstown* (1st Cir. 1991)
936 F2d 18 ........ 12

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.* (9th Cir. 1988)
840 F2d 685 ........ 7

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.* (2d Cir. 1986)
782 F.2d 329 ........ 13

*Fingerhut Corp. v. Ackra Direct Marketing Corp.* (8th Cir. 1996)
86 F3d 852 ........ 9

*Foy v. Dicks* (ED PA 1993)
146 FRD 113 ........ 9

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.* (9th Cir. 2004)
375 F3d 922 ........ 9

*Gucci America, Inc. v. Gold Center Jewelry* (2nd Cir. 1998)
158 F3d 631 ........ 5

*Hritz v. Woma Corp.* (3rd Cir. 1984)
732 F2d 1178 ........ 9

*In re Chinese Manufactured Drywall Product Liability Litig.* (5th Cir. 2014)
742 F3d 576 ........ 5

*Indigo America, Inc. v. Big Impressions, LLC* (1st Cir. 2010)
597 F3d 1 ........ 5

*Jenkens & Gilchrist v. Groia & Co.* (5th Cir. 2008)
542 F3d 114 ........ 9

*Jones v. Phipps* (7th Cir. 1994)
39 F3d 158 ........ 9

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar* (9th Cir. 1999)
168 F3d 347 ........ 7



BRADLEY & GMELICH

*Northwestern Mut. Life Ins. Co. v. DeMalleray* (SD NY 1992) 789 F.Supp. 651 .................... 3, 12

*Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership* (1993) 507 US 380 .................... 11

*Sims v. EGA Products, Inc.* (7th Cir. 2007) 475 F3d 865 .................... 7

*Taylor v. Boston & Taunton Transp. Co.* (1st Cir. 1983) 720 F2d 731 .................... 7

*TCI Group Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F3d 691 .................... 5

*Trueblood v. Grayson* (ED VA 1963) 32 FRD 190 .................... 9

*United States v. Moradi* (4th Cir. Md. 1982) 673 F.2d 725 .................... 14

*United States v. Woodward Sand & Materials Co.* (S.D. Cal. Apr. 16, 1990) 1990 U.S. Dist. LEXIS 5896 .................... 13

*Waifersong, Ltd. v. Classic Music Vending* (6th Cir. 1992) 976 F2d 290 .................... 7

*Wehrs v. Wells* (7th Cir. 2012) 688 F3d 886 .................... 9

*Whelan v. Abell* (DC Cir. 1995) 48 F3d 1247 .................... 12

*Williams v. Meyer* (6th Cir. 2003) 346 F3d 607, .................... 9

**FEDERAL STATUTES**

*Federal Rule of Civil Procedure*, Rule 55(a).................... 5

*Federal Rule of Civil Procedure*, Rule 55(c).................... 5, 13

*Federal Rule of Civil Procedure*, Rule 60(b).................... 5

**STATE STATUTES**

***Labor Code §2863*** .................... 4, 10, 11

BRADLEY & GMELICH

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION.

On June 20, 2014, Plaintiff, THE PERFECT EVENTS dba EXTREME ENTERTAINMENT and EXTREME GREEKS ("TPE") filed a Complaint in the Los Angeles Superior Court alleging various causes of action against multiple defendants including moving party Todd Diamond ("Diamond"). (Complaint, Exhibit A.) On July 6, 2014, Diamond was served with the Complaint through substituted service of process which was perfected on July 9, 2014, when a copy of the Summons and Complaint was mailed to him at his residence. (Proof of Service, Exhibit B.)

Diamond ignored the Summons and Complaint. On November 7, 2014, the Court entered default against him. (Entry of Default, Exhibit C.) Thereafter, on December 10, 2014, TPE filed a First Amended Complaint ("FAC"). The FAC reduced the number of causes of action from 16 to 7. (FAC, Exhibit D.) On January 8, 2015, Diamond was again served with the FAC. (Proof of Service, Exhibit E.) On January 13, 2015, Diamond was also served with a Notice of Case Management Conference. (Exhibit F.)

Again, Diamond ignored the Summons and First Amended Complaint. Now, Diamond alleges that he contacted his employer, Korey Bosworth ("Bosworth") and informed him of the service. While Diamond claims that both discussed the matter, neither one forwarded the Summons and Complaint to legal counsel for a response.

Notably, contrary to his claims, at the time service of the Complaint, Diamond was actually an equity partner of SD Greek Life with Bosworth. Furthermore, Bosworth and Diamond together founded and are the co-owners of Defendant, TOKO Events, LLC ("TOKO"). TO – for Todd Diamond and KO- for Korey Bosworth. As such, either or both should have recognized the seriousness of the matter and forwarded the Summons and Complaint to legal counsel for a response.

BRADLEY & GMELICH

When Diamond failed to respond to the FAC in the time provided by law, on February 24, 2015, TPE obtained a second entry of default against Diamond which Diamond now seeks to have set aside. (Entry of Default, Exhibit G.) Despite knowing about this case for more than a year , Diamond ignored this lawsuit. Under these circumstances, good cause does not exist to set aside the default.

**2. THE FACTS SUPPORTING THE FIRST AMENDED COMPLAINT.**

TPE provides event planning and production services marketed specifically to college and university groups in Southern California. These groups have very particular needs when conducting events, including transportation, photography and video services, lighting/sound/staging, security staff, and venues. TPE developed a confidential and proprietary method of providing and consolidating these services by establishing specialized relationships and contractual agreements with their service providers. The niche TPE created was to establish a one-stop shop such that the group desiring such services could contract with TPE, who would then provide or subcontract all of the services.

TPE invested substantial time, effort, and expense in developing a customer list and venue list in Southern California, including, but not limited to, San Diego County. Among the more difficult issues in achieving success in TPE's industry is locating transportation vendors and venue managers who are willing to serve the college community. In fact, the identification of these companies and the relationships TPE established with the individuals employed by such vendors is one of TPE's most carefully guarded trade secrets. TPE expended significant efforts to establish, maintain, and guard these relationships. TPE has also spent significant time, effort and expense in employee recruiting and training to provide quality staff and managers to service its clients. (TPE's proprietary and confidential information, including, but not limited to, compensation data, customer lists, vendor lists, venue lists, financial information, marketing strategies, pending projects and proposals, research and development strategies, technological data, company philosophy,



BRADLEY & GMELICH

methods of operation, pricing structures, staffing models, employee training procedures and manuals, security plans, billing practices, price models, and staffing models are collectively referred to as "Trade Secrets and Confidential Information").

**A. Plaintiff's Trade Secrets and Confidential Information.**

Several years ago, Bosworth worked for TPE as a security officer. During his employment, he was exposed to TPE's business practices and methodology, yet he was screened from the most sensitive information of Plaintiff's operations. Bosworth left TPE ostensibly to pursue a career in the financial services sector with Defendant, Northwestern Mutual Life Ins. Co. as a financial representative.

Beginning in or around June 2013, Bosworth began a concerted effort to solicit TPE's business ostensibly to provide financial and investment services. At first, it appeared Bosworth was simply aggressively marketing Northwestern security and insurance products to TPE. During a meeting with TPE's principal, Bosworth requested and was provided detailed information regarding TPE's business, with the belief that the information would remain confidential. Later, plaintiff learned that Bosworth was trying to build his own event planning business that would directly compete with TPE and intended to use the confidential proprietary information to usurp TPE's business. It is believed that Bosworth's activities occurred approximately six (6) months after Bosworth and Diamond began to conspire against TPE.

At this same time, Bosworth also founded Defendant, Supreme Greeks and/or SD Greek Life (collectively "SG") whose operation(s) is based on the Trade Secrets and Confidential Information that Bosworth surreptitiously obtained from TPE while posing as TPE's financial representative. Furthermore, SG and Bosworth induced Diamond to breach his employment agreement with TPE to come work with them and profited from Diamond's inside information. SG has been using TPE's business model, has contacted TPE's clients and venues and interfered with





BRADLEY & GMELICH

TPE's existing business relationships. SG has profited from TPE's trade secrets, and has demonstrated a variety of unfair and unlawful business practices.

Diamond had been a key employee, and manager of TPE's San Diego branch. Diamond owed a duty of loyalty to TPE at all times. On or about January 4, 2010, Diamond executed an agreement entitled Employee Non-Disclosure Agreement (Complaint, Exhibit A.) Under the Agreement, Diamond agreed to refrain from misappropriating TPE's confidential information, using its trade secrets, and soliciting its employees and clients.

TPE believes Diamond violated the Agreement and California law when Diamond contacted numerous TPE clients, employees, and vendors to divert business away from TPE and to SG. On or about January 15, 2014, Diamond abruptly resigned despite being offered a substantial salary increase to stay. TPE has since discovered that, shortly after leaving, Diamond became an equity partner of SG. Moreover, ***TPE also has evidence that Diamond was secretly working with SG while he was still working for TPE in violation of Labor Code §2863***, and hijacked TPE's entire business model. Emails sent to Diamond's TPE account also evidence that he took events, which he started planning for TPE, and converted them to the financial benefit of SG.

Further, Diamond, and/or a professional hired by Diamond, intentionally deleted client information and other confidential data from TPE's main computer at its San Diego location. It appears that on or about January 20, 2014, five (5) days after Diamond resigned, the computer's hard drive was entirely wiped clean and a new operating system installed, leaving recovery of any data virtually impossible. These acts were believed to have been performed by Diamond in his individual capacity, and on behalf of SG.

Lastly, Diamond converted TPE's Dell computer that was purchased for Diamond to use in the San Diego office. Upon Diamond's resignation the computer was not returned and TPE believes that Diamond converted it to his own use and the



BRADLEY & GMELICH

use of Supreme Greeks and/or SD Greek Life.

### 3. *FEDERAL RULE OF CIVIL PROCEDURE*, RULE 55 IS THE LEGAL AUTHORITY REGARDING SETTING ASIDE AN ENTRY OF DEFAULT.

*Federal Rule of Civil Procedure*, Rule 55(a) states, emphasis added:

> "When a party against whom a judgment for affirmative relief is sought ***has failed to plead or otherwise defend***, and that failure is shown by affidavit or otherwise, the ***clerk must enter the party's default***."

Rule 55(c) states, emphasis added:

> "The court ***may*** set aside an entry of default ***for good cause*** ...."

The Court is under no obligation to set aside a properly entered default. The burden of demonstrating good cause to set aside said default lies with the party seeking to set it aside. (*Indigo America, Inc. v. Big Impressions, LLC* (1st Cir. 2010) 597 F3d 1, 3) Several factors should be considered when determining whether good cause exists to set aside an entry of default. The most important factors are:

1. ***Culpable conduct by the Defendant causing the default***. (*TCI Group Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F3d 691, 696; *Gucci America, Inc. v. Gold Center Jewelry* (2nd Cir. 1998) 158 F3d 631, 634);
2. ***Whether a meritorious defense is presented***. (*Indigo America, Inc. v. Big Impressions, LLC* at p. 3; *In re Chinese Manufactured Drywall Product Liability Litig*. (5th Cir. 2014) 742 F3d 576, 594 (same "***good cause" factors***, but also holding identical "good cause" standard applies to both Rule 55(c) and Rule 60(b)); and
3. ***Prejudice to the Plaintiff*** if relief is granted.

This tripartite test is "disjunctive," meaning that the Court is free to deny the motion to set aside default ***if anyone (1) of these three (3) factors is shown to exist***. (*American Ass'n of Naturopathic Physicians v. Hayhurst* (9th Cir. 2000) 227 F3d 1104, 1108-1109.)

Other factors the Court may consider include: The nature of ***Defendant's explanation for the default***; the ***good faith*** of the ***parties***; the ***amount*** of ***money involved***; and the ***promptness*** of the Defendant's ***motion to set aside*** the entry of default. (*Indigo America, Inc. v. Big Impressions, LLC, supra*, 597 F3d at 3.)



BRADLEY & GMELICH

### A. Culpable Conduct By The Defendant Causing Default To Be Entered.

Diamond's Motion asserts that he did not engage in any culpable conduct that caused default to be entered against him. However, as addressed in detail herein, Diamond's conduct, including ignoring the Complaint, status conferences, and the FAC, caused the default to be entered against him. Now, Diamond seeks this Court's assistance to get extricate him from the situation that he created.

First, Diamond cannot show good cause for why the default should be set aside. Diamond's asserts that he had a reasonable belief that he had not been properly served with the FAC. (Diamond Dec. ¶3) However, he also asserts that he immediately forwarded the FAC to his alleged employer Mr. Bosworth at which point both men discussed that SD Greek Life would arrange for Diamond's legal representation. (Diamond Dec. ¶3) Thereafter, Diamond did nothing until after the TPE obtained a second default against him. It was only then that Diamond and/or Bosworth decided to take the matter seriously and contact legal counsel. (Diamond Dec. ¶4) Nothing in Diamond's declaration explains why neither he nor Bosworth forwarded the matter to legal counsel upon receipt of the original Complaint, receipt of the Notice of Status Conference, receipt of the Entry of Default, or receipt of the FAC.

Second, Diamond completely ignores the fact that he was actually served, by substituted service, twice in this matter. First on July 6, 2014, with the Complaint, which was perfected by mailing on July 9, 2014, and then on January 8, 2015, with the FAC, which was perfected by mailing on January 9, 2015. Moreover, after Diamond completely ignored the service of both the Complaint and FAC, defaults were entered as to each pleading.

Third, a defendant seeking to set aside a default judgment normally must demonstrate "***mistake, inadvertence, surprise, or excusable neglect***." (FRCP 60(b)(1).) Although a defendant seeking relief from mere ***entry of default*** need only



BRADLEY & GMELICH

BRADLEY & GMELICH

show "good cause" (FRCP 55(c).), ***these same factors are generally considered in determining "good cause."*** (*Sims v. EGA Products, Inc.* (7th Cir. 2007) 475 F3d 865, 868; *Waifersong, Ltd. v. Classic Music Vending* (6th Cir. 1992) 976 F2d 290, 292) Such mistake may be one of fact or law, but in either case it must relate to defendant's duty to respond to the complaint, rather than to the merits of plaintiff's claim or other collateral matter. (*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar* (9th Cir. 1999) 168 F3d 347, 350) However, the mistake that resulted in the entry of default must be reasonable under the circumstances. This usually turns on the justifiability of the defendant's failure to ascertain the correct facts. ***Relief will not be granted where the failure to respond reflects the conscious desire to avoid defending the suit.*** (*Taylor v. Boston & Taunton Transp. Co.* (1st Cir. 1983) 720 F2d 731, 732-733; and *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.* (9th Cir. 1988) 840 F2d 685, 690.)

The undisputed facts show that Diamond cannot show any reasonable justification for why he failed to respond to the Complaint or the FAC. Immediately after receiving the FAC, Diamond admits that he contacted Bosworth because he was concerned about the lawsuit. That concern is evident because they both discussed his legal representation regarding this matter. Thereafter, they both did nothing and ignored the matter. Diamond's own admissions evidence a conscious desire to avoid defending the lawsuit by himself and Bosworth.

In *Conetta v. National Hair Care Ctrs., Inc.* (1st Cir. 2001) 236 F3d 67, 75, the defendant claimed he chose not to defend because he mistakenly thought the suit could not go forward until a state agency's investigation was complete. The court found this explanation "not credible" and that defendant had simply decided to ignore the lawsuit, hoping to avoid dealing with a "nuisance."

Like the *Conetta* case, Diamond should have been fully aware that the FAC filed against him was serious because it was not the first time he had been served with process and defaulted. As early as July 9, 2014, Diamond was served with the

BRADLEY & GMELICH

initial Complaint. After he ignored this service a default was entered on November 7, 2014. (Exhibit C) Therefore, it is disingenuous for Diamond to assert that he did not understand the seriousness of the situation simply because he believed that he was not personally served. Rather, he and Bosworth simply ignored the matter in the hopes that it would go away, which it did not. Thus, the facts show that it was Diamond's desire to avid defending the suit rather than a reasonable mistake that led to TPE obtaining default and this Court should not set aside the default now that has suddenly changed his mind and wants to fight the lawsuit.

Diamond cannot assert that the default was entered through surprise, inadvertence or excusable neglect. Clearly, Diamond was aware that he was a defendant in a lawsuit and brought it to the attention of Bosworth. The two discussed the matter, but there is no explanation regarding why they failed to forward the lawsuit to legal counsel. As such, Diamond cannot claim inadvertence or excusable neglect as no such supporting evidence exists. Moreover, as business professionals, Diamond and Bosworth are expected to have the business acumen to understand that the service of legal documents need to be taken seriously and addressed immediately by legal counsel. This is doubly so when a defendant receives not only one Complaint but two.

**B. <u>Diamond Cannot Present a Meritorious Defense.</u>**

R. Scot Sokol of Gordon & Rees filed in support of Diamond's Motion, a declaration addressing the various causes of action in the FAC, based on information and belief where he claims Diamond can mount a meritorious defense. However, TPE has substantial evidence to support its causes of action and establish that Mr. Sokol cannot meet his burden.[1]

---

[1] TPE is in possession of numerous documents supporting its causes of action against Diamond. Upon the Court's request, TPE will make those documents available should the Court seek to review them.

Current legal authority is clear that Diamond bears the burden of showing a defense that ***might make the result at trial different than that reached by default***. As shown herein, Diamond cannot meet this burden. The failure to do so is ground for denial of relief. (*Williams v. Meyer* (6th Cir. 2003) 346 F3d 607, 614; *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc*. (9th Cir. 2004) 375 F3d 922, 926-litigant must present "specific facts that would constitute a defense"; *Jenkens & Gilchrist v. Groia & Co*. (5th Cir. 2008) 542 F3d 114, 120-122.) In order to get the default set aside, Diamond must show that there ***is a bona fide chance*** that he will prevail in his affirmative defenses. (*Hritz v. Woma Corp*. (3rd Cir. 1984) 732 F2d 1178, 1181; *Jones v. Phipps* (7th Cir. 1994) 39 F3d 158, 165.)

Also, Diamond is required to file a legal memorandum concerning the legal defense(s) that contain more than simple denials and conclusionary statements. (*Trueblood v. Grayson* (ED VA 1963) 32 FRD 190, 196; *Foy v. Dicks* (ED PA 1993) 146 FRD 113, 116—"simple denials and conclusionary statements" inadequate; *Wehrs v. Wells* (7th Cir. 2012) 688 F3d 886, 890-891—conclusory general denial without factual support insufficient.) However, where a party has engaged in willful misconduct or a ***deliberate failure to respond***, "***the mere existence of a meritorious defense does not prohibit default judgment***." (*Fingerhut Corp. v. Ackra Direct Marketing Corp.* (8th Cir. 1996) 86 F3d 852, 857; see *Jenkens & Gilchrist v. Groia & Co*. (5th Cir. 2008) 542 F3d 114, 122, emphasis added.) As shown herein, Diamond cannot meet his burden.

First, Mr. Sokol claims, on information and belief, that Diamond never executed a written non-disclosure agreement as alleged by TPE in its FAC. However, attached as Exhibit A to the FAC is a written document with Mr. Diamond's name on it and what appears to be his signature at the bottom entitled - Employee Non-Disclosure Agreement. As such, unless Diamond is willing to state under penalty of perjury that the signature is not his, the document speaks for itself. Moreover, Diamond's declaration in support of his Motion makes no mention of this



BRADLEY & GMELICH

document or that he did not execute it. As such, the preponderance of the evidence shows that Diamond has no bona fide chance that his defense to TPE's Breach of Contract cause of action will be successful and this Court must deny his Motion in its entirety.

Second, Mr. Sokol claims, on information and belief, that Diamond did not convert a computer as the computer identified in TPE's Fourth cause of action was originally purchased by Diamond and was given to TPE upon his resignation. However, again, Diamond's declaration is silent on this matter and no evidence supporting Mr. Sokol's claim that Diamond, not TPE, purchased the computer has been provided. In its Initial Disclosures, TPE produced the receipt for the computer. As previously stated, simple denials and conclusionary statements cannot establish the existence of a meritorious defense. Without more, Mr. Sokol's claims constitute mere conclusionary statements that do not show any bona fide chance that Diamond's affirmative defense is meritorious. As such, Diamond's Motion should be denied in its entirety.

Third, Mr. Sokol claims that TPE has no proof that Diamond was working for SG while also working for TPE in violation of *Labor Code* §2863. Mr. Sokol claims that Diamond can show that he was not working for SG and TPE at the same time. However, what is glaringly missing from Diamond's Motion is his declaration supporting Mr. Sokol's claims. The reason for this is Diamond does not want to perjure himself.

TPE has obtained evidence that Bosworth sought to obtain a Private Patrol Operator's license and as part of the licensing process submitted a Qualifying Experience Form prepared by Diamond. Mr. Diamond confirmed on the form that Bosworth had the requisite 2000 hours of security experience to obtain the PPO license. In the declaration, Diamond claims to have worked at TOKO Events with Bosworth from March 2012 through the present. (Exhibit H) However, from January 2010 through January 2014, Diamond was employed full time by TPE in



BRADLEY & GMELICH

San Diego as its Manager. The Declaration unequivocally establishes that Diamond was working for TOKO during the period he was allegedly working full time for TPE.

Moreover, TOKO is a company that is in the same business as TPE, providing events for college and university groups in Southern California. Therefore, Diamond could not have supervised or had personal knowledge of Bosworth's alleged security guard activities in Texas during this time period unless, as he admits in this form, he was also working for TOKO in violation of *Labor Code* §2863. Thus, this document, by its very existence, establishes that Diamond cannot mount any meritorious defense to TPE's Fifth cause of action and this Court should not set aside the entry of default.

Fourth, Mr. Sokol claims on information and belief that the TPE computer that Diamond had access to did not contain any trade secrets or confidential information. Rather, the information was located on an external "cloud." Mr. Sokol provides no evidence to support this claim, not even a declaration from his client. Regardless, TPE on August 14, 2015, served a nine (9) page Trade Secret Designation on all parties to this action identifying the trade secret and confidential information Diamond appropriated from TPE prior to resigning. As such, contrary to Mr. Sokol's beliefs, trade secret and confidential information existed and Diamond was contractually obligated to keep such information private and secret pursuant to the non-disclosure agreement. As such, it is unlikely that Diamond will be able to mount any kind of meritorious defense to TPE's First cause of action and this Court should deny Plaintiff's Motion in its entirety.

**C. <u>Prejudice To The Non-Defaulting Party If Relief is Granted.</u>**

If TPE suffers prejudice by reopening of the action, the court may deny Diamond's Motion for relief. (*Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership* (1993) 507 US 380, 395, 113 S.Ct. 1489, 1498- ***danger of prejudice*** to non-defaulting party a "***relevant circumstance***" in determining whether



BRADLEY & GMELICH

relief granted, emphasis added.)

Plaintiff must be able to show that the delay resulted in the loss of evidence, that it increased the difficulty of discovery, ***or that it thwarted its ability to obtain relief***. (*Cutting v. Town of Allenstown* (1st Cir. 1991) 936 F2d 18, 22, plaintiff died in intervening period; *Northwestern Mut. Life Ins. Co. v. DeMalleray* (SD NY 1992) 789 F.Supp. 651, 654 - loss of records in interim; *Whelan v. Abell* (DC Cir. 1995) 48 F3d 1247, 1258-1259 - trial completed against other defendants, emphasis added.)

TPE's FAC for damages and injunctive relief contains the following prayer for relief (in relevant part), emphasis added:

> 1. An ***injunction*** restraining and enjoining Defendants for two (2) years from:
>
> (i) ***soliciting***, whether directly or indirectly, and whether alone or in concert with others, ***any business from any of Plaintiff's clients or customers whose names became known to Diamond and/or Bosworth***;
>
> (ii) ***continuing to serve the clients that they have already diverted*** from Plaintiff through their unlawful acts;
>
> (iii) ***using, disclosing, transmitting, and continuing to possess for any purpose Plaintiff's trade secrets and confidential information***, including, but not limited to, the client and customer lists that Defendants have obtained;
>
> (iv) *altering, removing, destroying, erasing, or deleting any evidence*, including without limitation, hard copy documents and information residing in personal and business computer drives, relating to Plaintiff and any of Defendants' activities in connection with Plaintiff or Plaintiff's clients and customers;
>
> (v) ***inducing or attempting to induce any of Plaintiff's present, former, or prospective clients and customers whose identities became known to Defendants through the acts of Diamond and/or Bosworth*** to terminate their financial relationships with Plaintiff; and
>
> (vi) ***inducing or attempting to induce any of Plaintiff's employees to leave*** Plaintiff's employ for the purposes of joining any competitor of Plaintiff;
>
> 2. An order requiring Defendants to ***immediately return to Plaintiff all originals and/or copies of any of its documents, records, computer files, databases, customer lists, information***, or other materials of a confidential or proprietary nature presently in Defendants' possession or under Defendants' control.



BRADLEY & GMELICH

Each and every day Diamond and Bosworth are allowed to use TPE's proprietary trade secrets and confidential client and vendor information results in a financial injury and damage to TPE's business goodwill. Diamond and Bosworth continue to use TPE's proprietary information to poach TPE's current client's and exclusive vendors. With the default and subsequent judgment against Diamond, TPE will be in a position to enjoin Diamond and any other third parties he may be working with from continuing to use TPE's trade secrets and confidential information. This will allow TPE to stop the ongoing loss of business, ongoing financial losses and avoid additional damage to its reputation and goodwill. Lastly, TPE will no longer have to worry about Diamond and/or any other third person he is working with from selling TPE's proprietary and confidential information.

TPE has and will continue to suffer extreme prejudice and injury each and every day Diamond, and by extension Bosworth, SG, TOKO, whom Diamond is partnered with, is allowed to possess, exploit and use TPE's property against it or to sell said trade secrets and confidential information to a third party competitor.

### D. Diamond's Motion To Set Aside The Entry of Default Was Not Prompt.

The court may set aside the entry of default for good cause. (*Federal Rule of Civil Procedure*, Rule 55(c).) Although Rule 55 does not set a time limit for seeking relief, courts have ***required the defaulting party to seek relief with reasonable promptness***. (*United States v. Woodward Sand & Materials Co.* (S.D. Cal. Apr. 16, 1990) 1990 U.S. Dist. LEXIS 5896; *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.* (2d Cir. 1986)782 F.2d 329, 336.)

Diamond asserts that he has acted promptly in seeking to set aside the entry of default. Based on the facts herein, this is clearly not the case. Rather, were it not for the fact that TPE filed a FAC, Diamond's delay in acting in any way, let alone seeking any sort of relief, would have been none existent.

> "***Whether a party has taken "reasonably prompt" action, of course, must be gauged in light of the facts and circumstances of each occasion …***" (*United States v. Moradi* (4th Cir. Md. 1982) 673 F.2d 725.)

The facts in this case, when taken as whole, do not support Diamond's claim of prompt action. TPE obtained its first entry of default against Diamond on November 7, 2014. Nearly ten (10) months ago. Diamond did nothing. Thereafter, TPE filed a FAC on December 10, 2014, and because of Diamond's continued inaction, obtained a second default on February 24, 2015. Diamond then waited four (4) additional months before seeking to set aside the latest default aside.

Diamond first learned of this matter when the initial Complaint was served on him on June 20, 2014, more than one year ago. The facts show that Diamond did nothing, other than speak to Bosworth about the FAC, until he learned about the second default which was filed on February 24, 2015. Neither Bosworth nor Diamond ever bothered to send a copy of the FAC to their legal counsel or determine if a response was necessary.

***The only effort to set aside the default occurred, after ToKo Events, LLC (and its counsel, Gordon & Rees) appeared in this case.*** On June 16, 2015, Toko Events, LLC removed the case to Federal court. Several days later, on June 24, 2015, Gordon & Rees filed a Motion to Set Aside Default on behalf of Diamond. The procedural history demonstrates that ***for over a year, Diamond ignored this lawsuit.*** Now, Diamond asks this Court for relief from Default entered against him claiming prompt action. As shown, this is simply not the case and this TPE respectfully requests that the Court deny Diamond's Motion in its entirety for all of the reasons stated herein, including Diamond's failure to promptly seek relief.

/ / /

/ / /

/ / /

/ / /

## 4. CONCLUSION.

For the reasons stated herein Plaintiff, THE PERFECT EVENT INC. dba EXTREME ENTERTAINMENT and EXTREME GREEKS requests that this Court deny Defendant, TODD DIAMOND's Motion to Set Aside Default in its entirety.

Respectfully submitted,

Dated: August 27, 2015

BRADLEY & GMELICH

By: ______________________________

John K. Flock, Esq.
Jaimee K. Wellerstein, Esq.
Darren P. Salute, Esq.

Attorneys for Plaintifff, THE PERFECT EVENT INC. dba EXTREME ENTERTAINMENT and EXTREME GREEKS

BRADLEY & GMELICH

**DECLARATION OF JOHN K. FLOCK, ESQ.**

I, John K. Flock, hereby declare:

1. I am an attorney licensed to practice before all courts of the State of California, and am an attorney with Bradley & Gmelich, attorneys of record for Plaintifff, THE PERFECT EVENT INC. dba EXTREME ENTERTAINMENT and EXTREME GREEKS ("TPE"). I am one of the attorneys with responsibility for this file, and as such, the following facts are within my own personal knowledge. If called as a witness, I could and would competently testify to the facts set forth below. I make this declaration in support of TPE's Opposition To Defendant, Todd Diamond's Motion To Set Aside Entry of Default in the present lawsuit.

2. Attached hereto as **Exhibit "A"** and incorporated herein by this reference is a true and correct copy of the June 20, 2014, Complaint naming Mr. Diamond as a Defendant in this Action. Also attached to this Complaint as Ex. "A" is a true and correct copy of the Non-disclosure Agreement Mr. Diamond executed.

3. Attached hereto as **Exhibit "B"** and incorporated herein by this reference is a true and correct copy of the proof of service evidencing that substituted service was perfected on Mr. Diamond on July 9, 2014.

4. Attached hereto as **Exhibit "C"** and incorporated herein by this reference is a true and correct copy of the November 7, 2014, Entry of Default evidencing the default against Mr. Diamond as to the initial Complaint.

5. Attached hereto as **Exhibit "D"** and incorporated herein by this reference is a true and correct copy of the First Amended Complaint ("FAC") which reduced the number of causes of action from 16 down to 7.

6. Attached hereto as **Exhibit "E"** and incorporated herein by this reference is a true and correct copy of the proof of service evidencing that substituted service was perfected on Mr. Diamond on January 9, 2015.

7. Attached hereto as **Exhibit "F"** is the Notice of Case Management Conference served on Mr. Diamond on January 13, 2015.

8. Attached hereto as **Exhibit "G"** and incorporated herein by this reference is a true and correct copy of the February 24, 2015, Entry of Default evidencing the second default taken against Mr. Diamond as to the FAC.

9. Attached hereto as **Exhibit "H"** and incorporated herein by this reference is a true and correct copy of the Qualifying Experience Form prepared by Mr. Diamond confirming that Mr. Bosworth had the requisite 2000 hours of security experience necessary to obtain a Private Patrol Operator's license. In the declaration, Diamond claims to have worked at TOKO Events with Bosworth from March 2012 through the present.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed August 27, 2015, at Glendale, California.

JOHN K. FLOCK, ESQ.

BRADLEY & GMELICH

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 700 North Brand Boulevard, 10th Floor, Glendale, California 91203.

On August 28, 2015, I served true copies of the following document(s) described as **PLAINTIFF, THE PERFECT EVENT, INC.'S OPPOSITION TO DEFENDANT, TODD DIAMOND'S MOTION TO SET ASIDE ENTRY OF DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN K. FLOCK, ESQ. IN SUPPORT THEREOF** on the interested parties in this action as follows:

M.D. Scully
Jason R. Dawson
GORDON & REES, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: 619-696-6700
Facsimile: 619-696-7124
*mscully@gordonrees.com*
*jdawson@gordonrees.com*
***Attorneys for Defendants, TODD DIAMOND, KOREY BOSWORTH and TOKO EVENTS, LLC dba SD GREEK LIFE (DOE 1)***

Matthew A. Hodel, Esq.
Fred L. Wilks, Esq.
Hodel Wilks LLP
4 Park Plaza, Suite 640
Irvine, CA 92614
Telephone: 949-450-4470
Facsimile: 949-450-4479
*mhodel@hodelwilks.com*
*fwilks@hodelwilks.com*
***Attorneys for Defendant, THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY***

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 28, 2015, at Glendale, California.

Patricia J. Morse